**SHAARE TEFILA CONGREGATION, et al., Plaintiffs,**

v.

**John William COBB, et al., Defendants.**

**Civ. A. No. R–84–880.**

United States District Court, D. Maryland.

April 22, 1985.

Joseph M. Hassett, Patricia A. Brannan, Daniel S. Cohen, Steven P. Hollman, Hogan & Hartson, Bethesda, Md., Paul Nolan, Baltimore, Md., for plaintiff.

Jewish Advocacy Center, Irwin N. Shappell, Washington, D.C., of counsel.

Robert B. Barnhouse, Deborah T. Garren, Piper & Marbury, Baltimore, Md., for defendant Remer.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

The Shaare Tefila Congregation, individually and on behalf of its members, instituted this civil action against eight defendants for alleged violations of federal and state law arising from defendants' desecration of plaintiffs' synagogue. Plaintiffs base their claims on federal civil rights statutes 42 U.S.C. §§ 1981, 1982 and 1985(3), and on Maryland common law of trespass, nuisance and intentional infliction of emotional distress.

Presently pending before the Court is defendant Michael David Remer's motion to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(1) and (6). Plaintiffs filed a response in opposition to the motion and defendant has replied thereto.[1] Oral argument is unnecessary and the Court rules pursuant to Local Rule 6 (D.Md.1984).

The grant of a motion to dismiss pursuant to Rule 12(b)(6) is appropriate only when it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In ruling upon the pending motions to dismiss, the Court must view the complaint in the light most favorable to plaintiffs and resolve every doubt in their behalf. *See* Wright and Miller, *Federal Practice and Procedure: Civil § 1357* (1969) and cases cited therein. The plaintiffs' allegations are to be taken as true for the purposes of ruling upon the motion. *See id.* and cases cited therein. *See also Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). Moreover, any inference that may reasonably be drawn or construed from

---

1. Plaintiffs in their opposition submit materials outside the pleadings (affidavits and deposition transcripts) and thereby subject the motion to treatment as one for summary judgment. Fed. R.Civ.P. 12(b). Given that extra-pleading materials are inappropriate in a motion based, as this one is in part, on Rule 12(b)(1), and finding that the materials submitted will not facilitate the disposition of this action, the Court elects to exclude the materials and consider the motion as one for dismissal. *See* Wright & Miller, *Federal Practice and Procedure: Civil § 1366* (1969).

plaintiffs' complaint shall be considered together with the allegations of fact. *Murray v. City of Milford, Connecticut,* 380 F.2d 468, 470 (2d Cir.1967); *L.S. Good & Co. v. H. Daroff & Sons, Inc.,* 263 F.Supp. 635, 644 (N.D.W.Va.1967).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) raises the question of whether a court has subject matter jurisdiction over a proceeding. In ruling upon this motion, the complaint will be construed broadly and liberally, in conformity with Federal Rule of Civil Procedure 8(f). *See, e.g., Bachowski v. Brennan,* 502 F.2d 79, 83 n. 4 (3d Cir.1974), *rev'd on other grounds sub nom., Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Duffield v. Memorial Hospital Ass'n of Charleston,* 361 F.Supp. 398, 400 (S.D.W.Va.1973), *aff'd on other grounds sub nom., Duffield v. Charleston Area Medical Center,* 503 F.2d 512 (4th Cir. 1974). *See generally* Wright & Miller, *Federal Practice and Procedure:* Civil § 1350 (1969) and cases cited therein. Where the complaint's jurisdictional allegations are complete, uncontradicted, and sufficient, the Court ordinarily must overrule a motion directed only at the language of the complaint. *See, e.g., Seaboard Finance Co. v. Martin,* 244 F.Supp. 329 (5th Cir.1957). However, the pleading will be read as a whole, with any relevant specific allegations found in the body of the complaint taking precedence over the formal jurisdictional allegation therein, and all uncontroverted factual allegations will be accepted as true. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gibbs v. Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). The plaintiff ordinarily bears the burden of proof on a Rule 12(b)(1) motion. *See, e.g., Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Gibbs v. Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Where the complaint's invocation of subject matter jurisdiction is based on a federal question, the plaintiff need only show that he has alleged a claim under federal law and that the claim is not frivolous. *See, e.g., Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The Court must weigh the merits of what is presented in a Rule 12(b)(1) motion. *See Peterson Systems, Inc. v. Morgan,* 224 F.Supp. 957 (W.D.Pa. 1963).

## Count I: 42 U.S.C. § 1981

The first count of the complaint alleges that the desecration of plaintiffs' synagogue deprived the congregation of the full and equal benefit of laws for the security of persons and property under 42 U.S.C. § 1981. That statute provides in pertinent part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ...

Plaintiffs further allege in Count I that the defendants' conduct was "motivated by racial prejudice in that the defendants perceive plaintiffs as racially distinct because they are Jews ..."

Defendant raises two arguments in support of dismissal of Count I. First, he contends that despite the allegations of racial animus in the pleadings, the essence of plaintiffs' claim is religious rather than racial discrimination, and as such it is not cognizable under § 1981. Second, defendant contends that state action is a required element of any claim under the full and equal benefit clause of the statute; because state action has not been alleged here dismissal is appropriate. The Court finds dismissal appropriate on the ground of state action, and therefore does not reach defendant's first argument for the purposes of Count I.[2]

---

**2.** Defendant raises a similar argument concerning the true nature of plaintiffs' claim in rela-

tion to Count II of the complaint. *See infra.*

Plaintiffs do not assert that any state action is involved in the instant case. Rather, they contend that state action is not required for a claim under the full and equal benefits clause, relying on *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). The Supreme Court held in *Jones* that 42 U.S.C. § 1982 was intended to prohibit private acts of discrimination which violate property rights. Plaintiffs argue that the same principles relied upon in *Jones* have been and should in this instance be applied to the full and equal benefits clause of § 1981.

The *Jones* holding has been applied to interpret the contract clause of § 1981 as prohibiting private acts of discrimination. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Some courts have indeed extended the holding even further to find, as plaintiffs' urge here, that the full and equal benefit clause of § 1981 also prohibits private acts of discrimination. *See, e.g., Central Presbyterian Church v. Black Liberation Front*, 303 F.Supp. 894, 901 (E.D.Mo.1969). This is by no means a universal interpretation, however. Other courts have noted a distinction between the contract and full and equal benefit clauses of § 1981, finding the concept of state action to be implicit in the latter:

> The words 'full and equal benefit of all laws and proceedings for the security of persons and property' ... suggests a concern with relations between the individual and the state, not between two individuals. The state, not the individual, is the sole source of law, and it is only the state acting through its agents, not the private individual, which is capable of denying to blacks the full and equal benefit of the law. Thus, while private discrimination may be implicated by the contract clause of section 1981, the concept of state action is implicit in the equal benefit clause.

*Mahone v. Waddle*, 564 F.2d 1018, 1029 (3rd Cir.1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978).

■ The Third Circuit's interpretation of the full and equal benefits clause in *Mahone* was recently adopted by the U.S. District Court for the Eastern District of Virginia. In *Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.*, 569 F.Supp. 1344 (E.D.Va.1983), *aff'd*, 742 F.2d 1448 (4th Cir.1984), the court granted summary judgment against the plaintiff's § 1981 action based on expulsion from a private rescue squad, finding no basis for a claim under the contract clause and no state action to support a claim under the full and equal benefit clause. 569 F.Supp. at 1353. This Court is in full agreement with the reasoning expressed in *Mahone* and adopted in *Eggleston* which distinguishes between the contract and equal benefit clauses for the purposes of state action. In the instant case there does not exist, nor do plaintiffs assert, any basis for a claim under the contract clause. Nor does there exist, and plaintiffs again do not assert, state action to support a claim under the full and equal benefit clause. Dismissal is accordingly proper as to Count I of the complaint.

### Count II: 42 U.S.C. § 1982

The second count of the complaint alleges that defendants' desecration of the synagogue deprived plaintiffs of the right to hold real and personal property in violation of 42 U.S.C. § 1982. That statute provides as follows:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

Plaintiffs again specifically allege in this Count that the defendants' conduct was "motivated by racial prejudice in that defendants perceive plaintiffs as racially distinct because they are Jews."

Defendants argue in support of dismissal of Count II that despite the "pleading artifice" by which plaintiffs attempt to assert race discrimination as the basis for their claim, the claim is nevertheless one of reli-

gious discrimination to which § 1982 does not apply. Plaintiffs argue in response that by specifically alleging that defendants' acts were motivated by racial animus they have in fact stated a claim for race discrimination cognizable under § 1982.

42 U.S.C. § 1982, along with § 1981, had its origin in the first section of the Civil Rights Act of 1866. *Tillman v. Wheaton-Haven Recreation Association,* 410 U.S. 431, 439, 93 S.Ct. 1090, 1094, 35 L.Ed.2d 403 (1973). That Act was intended to protect a "limited category of rights, specifically defined in terms of racial equality." *Georgia v. Rachel,* 384 U.S. 780, 791, 86 S.Ct. 1783, 1789, 16 L.Ed.2d 925 (1966). Not surprisingly, then, § 1982 has been held to apply solely to racial rather than to other types of discrimination. *Jones v. Alfred H. Mayer Co., supra,* 392 U.S., at 413, 88 S.Ct. at 2189 (1968). Moreover, the Supreme Court has specifically noted that the statute does not address itself to discrimination based on religion. *Id.*

Plaintiffs in defending their cause of action under § 1982 do not argue for a broad interpretation of the statute such as would protect against discrimination based on religion. Nor do they ask for judicial recognition of a Jewish racial identity in order that the statute be applicable here. Rather, plaintiffs argue that race discrimination for the purposes of § 1982 should be determined by the subjective perceptions of the discriminator: whatever the reality may be, because it is alleged that the defendants in this case *perceive* Jews to be a separate race and were motivated by racial animus, a viable cause of action exists.

■ The Court is unwilling to adopt an interpretation which relies so entirely on the idiosyncracies of individual defendants in civil rights cases. As defendant notes, such an approach would have the practical effect of extending § 1981 and § 1982 to apply to any group, however defined, merely by virtue of alleging that an individual defendant perceived the group as racially inferior, however irrational that perception might be. Moreover, the suggested approach is at odds with the language of decisions in this district concerning the

scope of § 1981, which is clearly applicable to § 1982 as well. In *Martinez v. Hazelton Research Animals,* 430 F.Supp. 186 (D.Md.1977), Judge Murray in deciding whether a discrimination claim by a Hispanic stated a proper cause of action under § 1981 specifically noted that some Hispanic individuals "may suffer discrimination closely akin to that experienced by members of the black race," but found that the plaintiff had not "sufficiently alleged racial background of the plaintiff in order to support an allegation of racial discrimination" under the statute. *Id.* at 187–88. Clearly it was the "racial background of the plaintiff" rather than the racial perceptions of the defendant, that the court found determinative. Judge Miller in *Lopez v. Sears, Roebuck and Co.,* 493 F.Supp. 801 (D.Md. 1980) adopted the above language from *Martinez* but found that in his case the plaintiff had "clearly stated that the alleged discrimination is based both on nationality (Hispanic) and race (brown)." 493 F.Supp. at 807. Again, it is, to use Judge Murray's term, the "racial background" of the plaintiff ("race (brown)") that was found to support a cause of action under the statute. Applying this principle to the instant case, the Court finds that plaintiffs' allegation that defendants perceive them as racially distinct fails to establish a cause of action under § 1982.

■ The Court is sympathetic to plaintiffs' outrage and sorrow over the desecration of their place of worship, and recognizes the history of discrimination against Jews which is so eloquently described in plaintiffs' brief. Nevertheless, as plaintiffs themselves affirm, Jews do not constitute a distinct or recognizable "race" and are not commonly identified as such. Distorted beliefs of certain deviant groups to the contrary, the Court holds that discrimination against Jews is not race discrimination within the meaning of the statutes in question. *See Budinsky v. Corning Glass Works,* 425 F.Supp. 786, 789 (W.D.Pa.1977) (persons of Slavic, Italian or Jewish origin "are not so commonly identified as 'races' nor so frequently subject to that 'racial' discrimination which is the specific and ex-

clusive target of § 1981"); *Wald v. International Brotherhood of Teamsters*, 24 FEP Cases 616, 619 (C.D.Ca.1980) "[T]he weight of authority supports the view that claims of discrimination against Jews do not state claims under § 1981"). *But see Marlowe v. Fisher Body Division*, 11 FEP Cases 1357 (C.D.Mich.1975) (in certain contexts discrimination against Jewish persons could be the equivalent of race discrimination under § 1981).

### Count III: 42 U.S.C. § 1985(3):

The third count of the complaint alleges that in violation of 42 U.S.C. § 1985(3) the defendants conspired to deprive plaintiffs of equal protection of the laws or of equal privileges and immunities under the laws, including but not limited to the right to travel, the right to assemble and worship, and rights protected by 42 U.S.C. § 1981 and § 1982, Maryland criminal laws against destruction of property and Maryland common law against trespass, nuisance and intentional infliction of emotional distress. In view of the Court's dismissal of Counts I and II, the claim of conspiracy to deprive plaintiffs of rights under 42 U.S.C. § 1981 and § 1982 must also be dismissed. In addition, plaintiffs no longer assert the right to assemble and worship as an element of Count III, apparently conceding that a claim under § 1985(3) as applied to First Amendment rights fails in the absence of state action. *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). The Court will accordingly consider plaintiffs' § 1985 claim only as it applies to the federal right to travel and the various state rights plaintiff has asserted.

### Right to Travel:

Nowhere in the complaint do plaintiffs make specific factual allegations that defendants interfered with their right to travel. Plaintiffs argue, however, that from their allegations as to the location of the synagogue and its members, the conduct of the defendants and the effect of that conduct on plaintiffs the finder of fact could conclude that the purpose and effect of the conspiracy was infringement of interstate travel. The Court finds this argument much too attenuated to support a cause of action under § 1985(3).

Certainly plaintiffs' conclusory allegation in Count III that defendants conspired for the purpose of depriving plaintiffs of their federal constitutional right to travel is insufficient to state a cause of action under § 1985. *Greene v. JHU*, 469 F.Supp. 187, 198 (D.Md.1979). Nor does the sum of the other allegations specified by plaintiffs support such a claim. The Court finds this case to be easily distinguished from *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), upon which plaintiffs rely. In *Griffin* the Supreme Court reversed an order dismissing a § 1985 complaint, on the ground that under the allegations presented it was open to the plaintiffs to prove at trial that defendants conspired to deprive them of their right to travel. The complaint in *Griffin* specifically alleged that plaintiffs were traveling upon federal, state and local highways in and about several counties, one of which was located on a state border; that defendants conspired to block plaintiffs' passage on those public highways and that pursuant to the conspiracy defendants in fact drove into the path of plaintiffs' vehicle and physically blocked its passage. In the instant case, by contrast, plaintiffs fail to allege any actual interference with their right to travel. Nor is there any support in the pleadings for the inference that defendants conspired to interfere with this right. Plaintiffs' claim under § 1985(3) is accordingly dismissed insofar as it concerns plaintiffs' right to travel.

### Rights Under Maryland Law:

Plaintiffs argue that state as well as federal rights are protected under § 1985(3), citing *Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499 (9th Cir.1979). The Court is persuaded, however, that the statute is properly interpreted to reach only federal constitutional and statutory rights. Subsequent to the Ninth Circuit's holding in *Reichardt* the

**1510**

Supreme Court described § 1985(3) as "providing a civil cause action when some otherwise defined *federal* right ... is breached by a conspiracy ...". *Great American Federal Savings and Loan v. Novotny*, 442 U.S. 366, 376, 99 S.Ct. 2345, 2351, 60 L.Ed.2d 957 (1979) (emphasis added). The limitation of § 1985(3) to rights guaranteed by federal law or the Constitution has been clearly asserted by the Fourth Circuit as well. *McNutt v. Duke Precision Dental and Orthodontic Labs, Inc.*, 698 F.2d 676, 680 (4th Cir.1983). Accordingly, the claim under § 1985(3) must be dismissed insofar as it concerns the various state rights asserted.

Plaintiffs have failed to state a cause of action on any of the purported bases under § 1985(3). Count III of the complaint must accordingly be dismissed.

*Counts IV–VI: State Law Claims*

The remaining counts of the complaint allege violations of Maryland statutory and common law. Given the Court's dismissal of all federal claims, the pendent state claims must also be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Although the motion to dismiss was filed on behalf of only one defendant it is obvious from the rulings contained herein that dismissal is appropriate as to the entire case against all defendants. Accordingly, for the reasons stated herein, it is this 22nd day of April, 1985, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant Remer's motion to dismiss is GRANTED; and,

2. That the action is DISMISSED as to all defendants; and,

3. That the Clerk of the Court shall mail copies of this Memorandum and Order to all counsel of record.